## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**GROVER MELVIN**,

                Plaintiff,

    **v.**

**WORTHINGTON INDUSTRIES, INC.,**

                Defendant.

**Case No. 2:20-cv-3760**

**Judge Graham**

**Magistrate Judge Deavers**

## OPINION AND ORDER

Plaintiff Grover Melvin brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") to recover benefits from Defendant's short-term disability benefits plan (the "Plan") under 29 U.S.C. § 1132(a)(1)(B) and to receive penalties for Defendant's failure to timely provide copies of the Plan pursuant to 29 U.S.C. § 1132(c) and 29 C.F.R. 2560.503-1. *See generally* Doc. 18. This matter is before the Court on cross-motions for summary judgment to answer the preliminary question of whether the Plan is covered under ERISA, Docs. 35 and 36.

### I.      Background

Defendant offers the Plan at no cost to eligible employees. Hill Decl. at ¶ 4. The Plan is administered by three companies: MyQHealth Care Coordinators ("MyQHealth"), Cigna, and Defendant. MyQHealth helps eligible employees file claims with Cigna. Doc. 35-1 at 29; Hill Dep. at 38:5-18. Cigna reviews the claims and makes eligibility recommendations to Defendant. Hill Dep. at 40:8-11. Defendant then ultimately decides whether to pay on each disability claim. Hill Dep. at 40:12-17. All claims paid are processed through Defendant's normal payroll and paid out of Defendant's general assets. Hill Decl. at ¶ 5; Hill Dep. at 66:5-7.

Defendant's disability benefits guide explains the Plan's benefits as follows:

The first 40 hours of your disability claim is generally paid under the Worthington Industries Salary Plan. Upon approval, the next 3 weeks or 120 hours are paid as Salary Continuance. During the Salary Plan and Salary Continuance phases of the benefit, you can expect to receive your full base wage and profit sharing.

Short-Term Disability begins after Salary Continuance and is equal to 75% of "benefit earnings" and is payable for up to 23 weeks. "Benefit Earnings" is defined as regular annualized pay as calculated by the Company each year on September 30. It includes base pay, profit sharing and commissions earned during the previous 12 months and is effective on the following January 1. If you have worked less than 12 months with the Company, the amount of earnings will reflect a 12 month projection based upon other employees with similar base rates.

Doc. 35-1 at 34.

Plaintiff was a participant in the Plan through his employment at Defendant's factory. Supp. Compl. at ¶¶ 10-11. In 2018, He applied for short-term disability, complaining of an inguinal hernia, chronic obstructive pulmonary disease, asthma, skin lesions, degenerative disc disease, and disc space narrowing. *Id.* at ¶ 13. Cigna reviewed Plaintiff's application and medical documents and recommend his claim be denied. *Id.* at ¶ 19. Plaintiff appealed Cigna's decision twice and Cigna affirmed its decision both times. *Id.* at ¶¶ 20-27. Defendant adopted Cigna's decision and declined to pay Plaintiff benefits. *Id.* at ¶ 34.

This action was filed on July 27, 2020. The assigned magistrate judge ordered limited discovery on the issue of whether the Plan is covered by ERISA. Doc. 24. The limited discovery was completed, and the parties filed cross-motions for summary judgment, Docs. 35 and 36.[1]

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant

---

[1] The Court construes Plaintiff's motion, which is captioned as a motion for finding of ERISA plan, as a motion for summary judgment.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs.*, Inc., 504

U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### III.    Discussion

The existence of an ERISA covered plan is an element of an ERISA claim, not a prerequisite for federal jurisdiction. *Daft v. Advest, Inc.*, 658 F.3d 583, 590-91 (6th Cir. 2011). Whether a plan is covered by ERISA "is a question of fact to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 479 (6th Cir. 2007) (quoting *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 847 (6th Cir. 2006)). A three-part test guides this analysis: "(1) first, does a 'safe harbor' exception apply; (2) if not, do 'the surrounding circumstances' suggest that 'a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving benefits'; and (3) has 'the employer established or maintained the plan with the intent of providing benefits to its employees.'" *Id.* (quoting *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434-35 (6th Cir. 1996)).

The present dispute is resolved at the first step – the existence of a safe harbor exception. ERISA defines "employee welfare benefit plan" and "welfare plan" as:

> any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, death, or unemployment, . . . .

29 U.S.C. § 1002(1). The Department of Labor has created a safe harbor exception for payroll practices. 29 C.F.R. § 2510.3-1(b); *Abella v. W.A. Foote Mem'l Hosp., Inc.*, 740 F.2d 4, 5 (6th Cir. 1984). Payroll practices include the:

> [p]ayment of an employee's normal compensation, out of the employer's general asserts, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons . . . .

29 C.F.R. § 2510.3-1(b)(2).

Defendant has presented uncontested evidence that the Plan is a payroll practice. Defendant's general assets are used to pay short-term disability benefits originally equal to the employee's regular pay, then in an amount of 75% of the employee's regular pay. Hill Decl. at ¶ 5; Doc. 35-1 at 34. Benefits not in excess of regular pay constitutes normal compensation. *Langley v. DaimlerChrysler Corp.*, 407 F. Supp. 2d 897, 912 (N.D. Ohio 2005), aff'd, 502 F.3d 475 (6th Cir. 2007); *Martin Marietta Energy Sys., Inc. v. Indus. Comm'n of Ohio*, 843 F. Supp. 1206, 1211 (S.D. Ohio 1994).

Plaintiff attempts to foreclose this conclusion by arguing that the benefit payments cannot be normal compensation "because too many outside parties are exercising administrative control in a process that should primarily involve only the employer and the employee." Doc. 38 at 7. He asserts that Defendant's normal process of compensating employees is to have a supervisor approve an employee's timesheet. Doc. 36 at 14. In contrast, the process of compensating employees pursuant to the Plan involves two outside entities. *Id.* at 14-15.

This argument is unpersuasive. The payroll practice exception requires that the compensation itself be normal, it is not focused on the process by which the compensation is determined or approved. This conclusion is supported by the very existence of the payroll practice exception. Payments premised on disability status necessarily entail a different process, such as disability

status determinations, than payments for work performed. Yet the payroll practice exception contemplates that payments made when an employee is disabled can constitute normal compensation. Therefore, an employer's outsourcing the initial disability determination does not change that the resulting payment made from the employer's general asserts can be normal compensation.

In sum, the Court finds that the Plan provides for the payment of normal compensation from Defendant's general asserts. Therefore, the Plan is a payroll practice not covered by ERISA.

### IV.     Conclusion

For the above reasons, Defendant's motion for summary judgment, Doc. 35, is **GRANTED** and Plaintiff's motion for summary judgment, Doc. 36, is **DENIED**. Plaintiff seeks leave to file a second supplemental complaint asserting one additional ERISA claim against Defendant and two ERISA claims against New York Life Insurance Company, Cigna's successor in interest. Because Defendant's Plan is not covered under ERISA, these additional claims would be futile. Therefore, Plaintiff's motion for leave to file second supplemental complaint, Doc. 41, is **DENIED**. The clerk is directed to enter final judgment in favor of Defendant.

**IT IS SO ORDERED**.


s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: May 27, 2022